UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TERRY MURRAY, individually and on behalf of all others similarly situated, | : : : | Case No. 1:15-cv-60 |
| | : | Judge Timothy S. Black |
| Plaintiff, | : : | |
| vs. | : : | |
| CHOICE ENERGY, LLC, *et al.*, | : : | |
| Defendants. | : | |

**ORDER GRANTING MOTION TO DISMISS
OF DEFENDANT CHOICE ENERGY, LLC'S (Doc. 7)**

This civil action is before the Court on Defendant Choice Energy, LLC's Motion to Dismiss (Doc. 7) and the parties' responsive memoranda (Docs. 13, 17).

### I. STATEMENT OF THE CASE

Plaintiff Terry Murray brings this putative class action against Defendants Choice Energy, LLC and Premiere Business Solutions, LLC alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.* (Doc. 1). Choice Energy filed a motion to dismiss Plaintiff's complaint and a crossclaim against Premiere for breach of contract. (Doc. 10). Attached to the crossclaim complaint are a Services Agreement and Turnkey Telemarketing Sales Outsourcing Agreement ("Outsourcing Agreement") entered into between Choice Energy and Premiere. (*Id.*, Exs. A, B). The Services Agreement provides that Premiere will provide telemarketing services for Choice Energy and sets forth other terms of the relationship between the parties. (*Id.*, Ex.

A). The Outsourcing Agreement provides details of the specific services that Premiere provides. (*Id.*, Ex. B).

## II. FACTS ALLEGED BY PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Choice Energy and Premiere are limited liability companies organized in Iowa. (Doc. 1 at ¶¶ 7, 8, 16). Both entities' principal place of business is located at the same address and suite number in West Des Moines, Iowa. (*Id.* at ¶ 16). Choice Energy is a licensed electric supplier providing electric generation services for primarily residential customers and businesses. (*Id.* at ¶ 1). Premiere is a telemarketing company that actively sells Choice Energy's services, on Choice Energy's behalf, through widespread telemarketing. (*Id.* at ¶ 2).

In addition to operating out of the same location, Choice Energy's and Premier's "officer and management personnel are intertwined." (Doc. 1 at ¶ 17). Specifically, Michael Needham is Choice Energy's registered agent in Iowa and also a managing partner and owner of Premiere. (*Id.* at ¶ 18). Brent Hood is a managing partner and co-founder of Premiere and is also listed as the registrant and administrator of a website associated with Choice Energy. (*Id.* at ¶ 19).

Plaintiff alleges that "Defendants acted in concert to solicit customers to use Defendant Choice Energy's electric energy supply services" and that "Defendants acted in a joint manner as a singular entity to solicit consumers to purchase electric supply

2

services from Choice Energy through telemarketing." (Doc. 1 at ¶¶ 11, 22). Although the complaint often refers to actions undertaken by "Defendants," the complaint does specify that "Defendant Premiere makes outbound telemarketing calls on behalf of Choice Energy to consumers nationwide during which the telemarketers offer consumers savings on their electric bills" and "Defendant Choice Energy simply outsourced the telesales of its products to Defendant Premiere for its benefit." (*Id.* at ¶¶ 15, 22).

Plaintiff registered for the National Do Not Call Registry on March 14, 2014. (Doc. 1 at ¶ 25). Between August and November 12, 2014, Plaintiff received at least ten telephone calls to his landline telephone from the same telephone number. (*Id.* at ¶ 26). Plaintiff answered the call on more than one occasion and was informed that the call was from Choice Energy. (*Id.* at ¶ 27). On several occasions, Plaintiff expressly requested to be removed from the calling list and to no longer receive any calls from Defendants. (*Id.* at ¶ 28). However, Plaintiff continued to receive calls. (*Id.* at ¶ 29). Defendants placed calls to Plaintiff and others like him without prior consent and failed to honor requests to no longer receive such calls. (*Id.* at ¶ 21). Defendants also failed to check its calling list against numbers registered on the Do No Call Registry. (*Id.* at ¶ 20).

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the complaint shall be dismissed. *Id*. (quoting Fed. Rule Civ. P. 8(a)(2)).

In ruling on a Rule 12(b)(6) motion to dismiss, the Court may only consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are

4

referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV.  ANALYSIS

The TCPA provides a private right of action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Plaintiff alleges that Defendants violated two regulations. The first regulation makes it unlawful for any person or entity to "initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Under the second regulation, it is unlawful for any person or entity to "initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." *Id.* § 64.1200(d).

In *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013), the Federal Communications Commission issued a Declaratory Ruling interpreting these provisions of the TCPA and its accompanying regulations. Specifically, the FCC addressed whether a seller can be liable for violations of the do-not-call provisions of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), (d) committed by a third-party telemarketer.[1] The FCC held that

---

[1] The Declaratory Ruling also addressed liability for violations of 47 U.S.C. § 227(b). However, that provision is not at issue in this action.

5

a "seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law principles of agency for TCPA violations committed by a third-party telemarketer." *Id.* at 6582.

### A. Direct Liability

Plaintiff first argues that the complaint pleads a plausible TCPA claim against Choice Energy under the direct liability theory. In the Declaratory Ruling, the FCC held that direct liability under § 64.1200(c)(2) or § 64.1200(d) arises if a person or entity "initiates" a call in violation of those regulations. *In re DISH Network, LLC*, 28 FCC Rcd. at 6583. Interpreting the term "initiate," the FCC held that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* The FCC reasoned that this interpretation reflected "a clear distinction between a call that is made by a seller and a call that is made by a telemarketer on the seller's behalf." *Id.*[2]

Plaintiff argues that he has sufficiently pleaded that Choice Energy is directly liable for the alleged TCPA violations because "it is entirely plausible that Choice and Premiere are not really distinct entities" and because Choice Energy was "so involved" in

---

[2] The parties implicitly agree that Choice Energy is a "seller," which the regulations define as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

6

placing the calls to him. (Doc. 13 at 5-6).[3] Plaintiff identifies two factual allegations from the complaint to support the argument that Choice Energy and Premiere are not distinct entities: the two entities operate out of the same office suite and their "officer and management personnel are intertwined." (Doc. 1 at ¶¶ 16-19).

First, citing factors employed in the doctrine of alter ego under Ohio law,[4] Plaintiff contends that the complaint sufficiently alleges that Premiere is the alter ego of Choice Energy such that Choice Energy can be held directly liable. However, despite alleging that "Defendants' officer and management personnel are intertwined," the complaint's factual allegations do not support this conclusion. Plaintiff alleges that Michael Needham is Choice Energy's registered agent in Iowa and a managing partner and owner of Premiere. (*Id.* at ¶ 18). Additionally, Brent Hood is a managing partner and co-founder of Premiere and is "listed as the registrant and administrator of the website: www.4choiceenergy.com which is the website provided to callers by Defendant Choice

---

[3] Plaintiff's brief relies extensively on provisions of the Services Agreement and Outsourcing Agreement to argue that dismissal is not warranted. Although the Outsourcing Agreement and Services Agreement appear in the record, Plaintiff concedes that neither document is referred to in his complaint. (Doc. 13 at 11 n.8). Accordingly, the Court cannot consider these documents in ruling on the motion to dismiss. *Bassett*, 528 F.3d at 430.

[4] These factors are:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (quoting *LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689 (Ohio App. 1991)).

7

Energy." (*Id.* at ¶ 19). Although the complaint alleges that Needham and Hood serve as officers or management of Premiere, it fails to plead that Needham or Hood had an equivalent role with Choice Energy.[5] Further, the bare fact that Choice Energy and Premiere operate out of the same location is not sufficient to lead to liability under the alter ego doctrine. The complaint's conclusory statements do not contain any other specific factual allegations that could plausibly demonstrate that Premiere is an alter ego of Choice Energy.

Second, Plaintiff invokes language from the Declaratory Ruling to argue that Choice Energy was "so involved" with Premiere's placing of the telephone calls that direct liability is appropriate. In the Declaratory Ruling, the FCC ***indicated*** that a seller could be held directly liable for a TCPA violation even if the call was placed by a third party:

> one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example. But a construction of the statute that concludes that a seller always initiates a call that is made by a third party on its behalf would entirely collapse the distinction, reflected in our current rules, between seller and telemarketer.

*In re DISH Network, LLC*, 28 FCC Rcd. at 6583. Regardless of whether this statement is dicta, the complaint fails to plead any specific factual allegations to support the legal conclusion that Choice Energy was "so involved" in placing the calls that direct liability could be proper. Plaintiff cites four paragraphs that allege "Defendants" placed the calls

---

[5] Attached to Plaintiff's memorandum contra is an online newspaper article that refers to Hood as the managing partner of Choice Energy. The Court is similarly unable to rely on this document when ruling on the motion to dismiss. *Bassett*, 528 F.3d at 430.

8

and failed to honor do-not-call requests, without indicating which particular Defendant took the action in question. (Doc. 1 at ¶¶ 20-23). However, the complaint makes clear that "Defendant Premiere makes outbound telemarketing calls on behalf of Choice Energy" and "Defendant Choice Energy simply outsourced the telesales of its products to Defendant Premiere for its benefit." (*Id.* at ¶¶ 15, 22). There are no factual allegations in the complaint that Choice Energy had any active role or involvement in placing the calls, such as giving Premiere "specific and comprehensive instructions as to timing and the manner of the call."[6] Accordingly, Plaintiff fails to state a claim for which relief can be granted against Choice Energy under the theory of direct liability.

### B. Vicarious Liability

Plaintiff also argues that the complaint plausibly alleges a TCPA claim under the theory of vicarious liability. The Declaratory Ruling held that a "seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . , including not only formal agency, but also principles of apparent authority and ratification." *In re DISH Network, LLC*, 28 FCC Rcd. at 6584.

#### *1. Formal Agency*

Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's

---

[6] Plaintiff's brief relies extensively on provisions of the Outsourcing Agreement to demonstrate Choice Energy's involvement in the calls. (Doc. 13 at 6-7). However, the Court cannot consider this information because the document was not referred to in the complaint. *Bassett*, 528 F.3d at 430.

9

behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). "An essential element of agency is the principal's right to control the agent's actions." *Id.* § 1.01 cmt. f(1). In particular, "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id.* "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* § 2.01.

Plaintiff again relies heavily on contractual terms in the Services Agreement and Outsourcing Agreement, documents that the Court cannot consider in ruling on this motion to dismiss. The only two paragraphs of the complaint cited by Plaintiff provide that Choice Energy "outsourced" the telemarketing calls to Premiere. (Doc. 1 at ¶¶ 22-23). However, these allegations are devoid of specific factual allegations indicative of an agency relationship, including that Choice Energy had the right to control and the power to give interim instructions.

In *Toney v. Quality Resources Inc.*, No. 13-cv-42, 2014 WL 6757978 (N.D. Ill. Dec. 1, 2014), the plaintiff adequately alleged an agency relationship between the seller and the third-party telemarketer based on a number of specific factual allegations that demonstrated the control the seller exercised over the third-party telemarketer's placement of the calls. *Id.* at 10. Here, Plaintiff's complaint lacks any factual allegations that could plausibly show the existence of an agency relationship. The Declaratory

10

Ruling held "we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under . . . section 227(c)." *In re DISH Network, LLC*, 28 FCC Rcd. at 6593. Here, Plaintiff has not pled any factual allegations to support the "more" that is necessary to plausibly hold Choice Energy vicariously liable. Accordingly, Plaintiff has failed to plead a claim for relief against Choice Energy under a formal agency theory.

### 2. *Apparent Agency*

"Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Restatement (Third) of Agency § 2.03 cmt. c. Plaintiff argues that he has pleaded facts sufficient to show apparent authority because "Choice [Energy] plausibly communicated indirectly with the third party—Plaintiff Murray—by expressly authorizing Premiere to make the calls and to inform consumers that the calls were being made by Choice Energy." (Doc. 13 at 10). Plaintiff supports this argument by reference to the Services Agreement and Outsourcing Agreement, but not to factual allegations in the complaint.

Plaintiff also invokes several examples provided in the Declaratory Ruling as "guidance" for the existence of apparent authority. *In re DISH Network, LLC*, 28 FCC Rcd. at 6592-93. Several parties to the Declaratory Ruling petitioned the Court of Appeals for the District of Columbia Circuit for review of that "guidance," arguing that the FCC exceeded its authority and acted arbitrarily and capriciously. *DISH Networks, LLC v. FCC*, 552 F. App'x 1 (D.C. Cir. 2014). The FCC conceded that the "'guidance'

has no binding effect on courts, that it is not entitled to deference under *Chevron* . . ., and that its force is dependent entirely on its power to persuade." *Id.* at 2. Several courts have subsequently found that the Declaratory Ruling's apparent authority "guidance" is not persuasive. *Toney*, 2014 WL 6757978, at *12; *Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09 C 5601, 2014 WL 7717584, at *5 n.3 (N.D. Ill. Nov. 21, 2014). This Court need not address that issue at this time because Plaintiff did not plead any allegations in the complaint that could plausibly support his apparent authority theory.

### 3. *Ratification*

Finally, Plaintiff argues that Choice Energy ratified the telephone calls placed by Premiere. Once again, Plaintiff relies only on the Services Agreement and Outsourcing Agreement to allege that Choice Energy had the requisite "knowledge of material facts" necessary for ratification. Restatement (Third) of Agency § 4.06. Additionally, Plaintiff has not plausibly pled an agency relationship between Choice Energy and Premiere, which is another necessary element for ratification. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 680 (9th Cir. 2014) ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." (quoting *Batzel v. Smith,* 333 F.3d 1018, 1036 (9th Cir. 2003))). Accordingly, Plaintiff has failed to state a claim for relief against Choice Energy under the theory of vicarious liability.

### C. **Leave to Amend**

In the alternative, Plaintiff requests leave to amend his complaint. (Doc. 13 at 11 n.8). Courts are encouraged to freely grant leave to amend "when justice so requires."

Case: 1:15-cv-00060-TSB Doc #: 20 Filed: 07/10/15 Page: 13 of 13 PAGEID #: 147

Fed. R. Civ. P. 15(a)(2).  A motion to amend should be denied, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."  *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).  "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."  *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).  Here, Plaintiff's reliance on provisions in the Services Agreement and Outsourcing Agreement, documents that were not previously available to him, creates a "reasonable probability that the complaint could [be] saved by an amendment."  *Newberry v. Silverman*, -- F.3d --, No. 14-3882, 2015 WL 3422781, at *8 (6th Cir. May 29, 2015).  Accordingly, the Court will permit Plaintiff to file an amended complaint to cure the pleading deficiencies identified in this Order.

## V.     CONCLUSION

Wherefore, for these reasons, Defendant Choice Energy, LLC's Motion to Dismiss (Doc. 7) is **GRANTED** and Plaintiff's TCPA claim against Choice Energy is dismissed without prejudice.  Plaintiff shall file an amended complaint within twenty-one days of the entry date of this Order.

**IT IS SO ORDERED**.

Date:   7/10/15                              *s/ Timothy S. Black*
                                                            Timothy S. Black
                                                            United States District Judge